UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| GREGORY MURPHY, | ) |
| *Plaintiff* | ) ) ) |
| v. | ) CAUSE NO. 3:19-CV-270 RLM-MGG ) |
| INDIANA FINANCE COMPANY, | ) ) ) |
| *Defendant* | ) |

## OPINION AND ORDER

This is the second of two lawsuits Gregory Murphy has filed against Indiana Finance Company alleging violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq.*. relating to a car loan. The parties agreed to a dismissal without prejudice in the first case, Cause No. 3:18-CV-737 PPS-MGG, and agreed to arbitrate the claim pursuant to an arbitration agreement that Mr. Murphy signed when he bought the car. When Indiana Finance refused to use JAMS – the arbitration organization chosen by Mr. Murphy chose – and to pay JAMS fees and costs unless Mr. Murphy agreed to pay travel expenses for an out-of-state arbitrator, Mr. Murphy filed this case. Indiana Finance's motion to dismiss or, alternatively, to stay proceedings and compel arbitration and its motion for sanctions currently pend before the court. For the following reasons, the court denies both motions.

The arbitration agreement between Mr. Murphy and Indiana Finance provides in relevant part:

> Any claim or dispute ... between you [Mr. Murphy] and us [Indiana Finance] ... which arises out of or relates in any manner to the purchase, financing, or lease of your vehicle ... shall, at your or our election...be resolved by neutral, binding arbitration and not by a court action ....
>
> You may choose the applicable rules of the American Arbitration Association ("AAA"), JAMS, or another arbitration organization, subject to [Indiana Finance's] approval. ... You may obtain a copy of the rules of the AAA by visiting its website (www.adr.org) or of JAMS by visiting its website (www.jamsadr.com). You can also refer to the websites to learn how to file for arbitration.
>
> The arbitrators shall be attorneys or retired judges and shall be selected in accordance with the applicable rules of the chosen arbitration organization. ... The arbitration hearing shall be conducted in the federal district in which you reside, or such other place convenient to you as required by the rules of the chosen arbitration organization. If you demand arbitration first, you will pay the filing fee if the chosen arbitration organization requires it. We will advance and/or pay any other fees and costs required by the rules of the chosen arbitration organization.
>
> The arbitrator's award shall be final and binding on all parties. ... The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims [are] frivolous.
>
> Neither you nor we waive the right to arbitrate by exercising self-help remedies, filing suit, or seeking or obtaining provisional remedies from a court.

[Doc. No. 7-1].

Mr. Murphy chose JAMS as the arbitration organization. JAMS had no arbitrators based in Indiana, but agreed to send one to Indiana to conduct the

2

arbitration for a fee. Indiana Finance told Mr. Murphy in a series of emails in March 2019 that there was a "plethora" of qualified arbitrators in the Northern District of Indiana (the federal district in which Mr. Murphy resides); that it was "wholly unnecessary" to incur travel expenses for an out-of-state arbitrator; and that "[it wasn't] using JAMS" unless [Mr. Murphy] stipulated that he would pay the JAMS arbitrator's travel expenses. In response, Mr. Murphy filed this suit, reasserting his claims under the Fair Debt Collection Act. Indiana Finance, in turn, moved to dismiss or to stay proceedings and compel arbitration.

"Although it is often said that there is a federal policy in favor of arbitration, federal law places arbitration clauses on equal footing with other contracts, not above them." Janiga v. Questar Capital Corp., 615 F.3d 735, 740 (7th Cir.2010) (citing Rent–A–Center, West, Inc. v. Jackson, 561 U.S. 63, 68 (2010)). The Federal Arbitration Act expressly provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," and that "the court … shall on application of one of the parties stay the trial of [a suit involving "any issue referable to arbitration"] until such arbitration has been had … providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. §§ 2 and 3.

Indiana Finance's motion is premised on the "last antecedent doctrine" and its belief that the arbitration agreement gives it the right to disapprove of any arbitration organization Mr. Murphy may chose, including JAMS. Citing, *e.g.*,

To-Am Equip. Co. v. Mitsubishi Caterpillar Forklift Am., 913 F. Supp. 1148, 1153 (N.D. Ill. 1995) (qualifying clause only modifies words immediately preceding it "unless the modifier is preceded by a comma"); Porto Rico Railway, Light & Power Co. v. Mor, 253 U.S. 345, 348 (1920) ("When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all."). It concludes that it didn't have to advance and/or pay the fees and costs required by an organization that it didn't approve, and hasn't waived its right to arbitrate by exercising its right to disapprove of Mr. Murphy's chosen organization, failing to pay JAMS required fees, or requiring Mr. Murphy to assume that obligation, if he wanted to proceed with JAMS.

Mr. Murphy interprets the agreement and Indiana Finance's actions differently. He contends that the arbitration agreement gives him the right to choose the arbitration organization; that Indiana Finance's approval was only required if he chose an arbitration organization other than AAA or JAMS; and that Indiana Finance breached the arbitration agreement and waived its right to arbitrate the dispute when it failed to advance and/or pay the fees required by JAMS and refused to use JAMS unless he agreed to pay those fees.

Principles of state (Indiana, in this case) contract law govern whether an arbitration agreement is binding and enforceable. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 939 (1995); Janiga v. Questar Capital Corp, 615 F.3d at

742). The court looks at the contract as a whole, reads it in context, and, "whenever possible, construes the plain language of the contract in a manner that won't "render any words, phrases, or terms ineffective or meaningless." Ryan v. TCI Architects/Engineers/Contractors, Inc., 72 N.E.3d 908, 914 (Ind. 2017) (citing State Farm Fire and Cas. Co. v. Riddell Nat'l Bank, 984 N.E.2d 655, 658 (Ind. Ct. App. 2013), *trans. denied.*, 989 N.E.2d 782 (Ind. 2013)). Any ambiguities are "construed against the party who furnished and drafted the agreement." Celadon Trucking Servs., Inc. v. Wilmoth, 70 N.E.3d 833, 839 (Ind. Ct. App.), *trans. denied*, 88 N.E.3d 1077 (Ind. 2017). Neither party contends the selection provision is ambiguous, but they disagree on how to interpret it.

The arbitration agreement requires that the arbitrator be "an attorney or retired judge" and clearly gives Mr. Murphy the right to chose the arbitrator or arbitration organization. It also requires Indiana Finance to "advance and/or pay [the] fees and costs required by the rules of the chosen arbitration organization," subject to reimbursement "in whole or in part by decision of the arbitrator if the arbitrator finds that any of [Mr. Murphy's] claims [are] frivolous."

Indiana Finance's interpretation of the selection provision might be grammatically correct, *see* Paroline v. United States, 572 U.S. 434, 447 (2014) (quoting Porto Rico Ry., Light & Power Co. v. Mor, 253 U.S. 345, 348 (1920)) ("When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language

5

demands that the clause be read as applicable to all."), but it would render meaningless and unenforceable a key provision of the agreement – Mr. Murphy's right to choose the rules that apply, which in turn govern selection of the arbitrator. *See, i.e.*, Nino v. Jewelry Exch., Inc., 609 F.3d 191, 204–205 (3d Cir. 2010) (arbitration agreement unenforceable when it provided that the employee was entitled to strike one arbitrator from the list of proposed arbitrators, but the employer was entitled to strike two arbitrators); Murray v. United Food & Commercial Workers Int'l Union, 289 F.3d 297, 302-304 (4th cir. 2002) (arbitration agreement unconscionable and unenforceable where it provided that the employee and employer were each entitled to strike arbitrators, but only from a list of arbitrators selected by the employer.").

Reading the agreement as a whole, in context, and in a manner that won't "render any words, phrases, or terms ineffective or meaningless," it's clear that Indiana Finance recognized and impliedly approved of the rules of the American Arbitration Association and JAMS. It required arbitrators to be "attorneys or retired judges", specifically identified AAA and JAMS as two of the arbitration organizations that customers like Mr. Murphy could chose, provided links to their websites, and told customers that they could "refer to th[ose] websites to learn how to file for arbitration." The arbitration agreement doesn't "mandate" that arbitration take place in the Northern District of Indiana, as Indiana Finance suggests, or place any geographic limitations on the choice of arbitrator or the

6

type of fees and costs required by the chosen arbitration organization. It says, "The arbitration hearing shall be conducted in the federal district in which you reside, *or such other place convenient to you as required by the rules of the chosen arbitration organization.*" (Emphasis added).

To the extent Indiana Finance conditioned its approval on Mr. Murphy assuming its duty to pay the arbitrator's expenses, its actions are inconsistent with the agreement's clear language:

> [Indiana Finance] will advance and/or pay any other fees and costs required by the rules of the chosen arbitration organization. ... The amount [it] pay[s] may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims [are] frivolous.

The arbitration agreement gave Mr. Murphy a right to choose JAMS as the arbitration organization, and Indiana Finance had an obligation to pay the fees and costs required by JAMS, which would include the arbitrator's travel expenses, subject to reimbursement if Mr. Murphy's claims were found to be frivolous.

Indiana Finance effectively asks to have its cake and eat it too, its interpretation of the selection provision in the arbitration agreement is grammatically correct, but because Mr. Murphy's (and the court's reading) is consistent with the rest of the agreement, and because Indiana law requires a contract to be construed against the drafting party, Indiana Finance's reading can't be said to be reasonable. Indiana Finance breached the arbitration agreement by refusing to arbitrate with JAMS. Indiana Finance cannot both

breach and enforce the arbitration agreement. *See* Sharif v. Wellness Int'l Network, Ltd., 376 F.3d 720, 726 (7th Cir. 2004) ("diligence or the lack thereof should weigh heavily in [determining whether a party has waived the right to arbitrate] —did that party do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration?") (Internal quotations omitted). *See also* In Re Tyco Int'l Ltd. Sec. Litig., 422 F.3d 41, 46 (1st Cir. 2005) ("A party cannot raise unjustifiable objections to a valid demand for arbitration, all the while protesting its willingness in principle to arbitrate and then, when the other side has been forced to abandon its demand, seek to defeat a judicial determination by asking for arbitration after suit has been commenced."); Sink v. Aden Enterprises, Inc., 352 F.3d 1197, 1200-02 (9th Cir. 2003) ("[defendant's] failure to pay required costs of arbitration was a material breach of its obligations in connection with the arbitration" and "preclude[d] [it] from obtaining a stay of litigation pending arbitration under [9 U.S.C.] § 3."); Stanley v. A Better Way Wholesale Autos, Inc., Case No. 3:17cv1215-MPS, 2018 WL 3872156 (D. Conn. Aug. 15, 2018) (defendant waived right to compel arbitration when it refused to pay AAA's required fees and "to play by the rules that it had itself agreed to").

Accordingly, Indiana Finance's motion to dismiss or to stay and compel arbitration [Doc. No. 6] and its motion for sanctions [Doc. No. 8] are DENIED.

SO ORDERED.

ENTERED: March 25, 2020

                                      /s/ Robert L. Miller, Jr.
Judge
United States District Court