UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| GREGORY MURPHY, | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:19-CV-270 RLM-MGG |
| | ) | |
| INDIANA FINANCE COMPANY, | ) | |
| | ) | |
| *Defendant* | ) | |

## OPINION AND ORDER

$90.86.

A dispute over a credit report showing that amount due but not delinquent has brought Gregory Murphy, Indiana Finance Company, and their attorneys to the brink of a three-day jury trial in a two-year-long federal civil case with one sanctions order and seventy-seven docket entries so far. Gregory Murphy contends that Indiana Finance Company violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b). A federal right is at issue, and resolving suits under federal law is why the courts are here, so the court has given the parties' arguments the same consideration as if $90 million was at issue. But still, one must marvel.

The story begins with Gregory Murphy's June 2016 purchase of a Dodge Grand Caravan from Oak Motors, financed through a 45-month Motor Vehicle

1

Retail Installment Sales Contract with Oak Motors. Oak Motors assigned the contract to Indiana Finance Company a month later.

Mr. Murphy says in his brief that the Grand Caravan purchase was part of an effort to patch up his poor credit. He'd filed for bankruptcy in 1996, hadn't been employed since 2005, had several delinquent accounts when he divorced in 2008, and had an unpaid $4,800 debt to Pro Marketing dating back to 2010 or 2012. How many delinquent accounts and what the outstanding balances were on those accounts is unknown. At some point in 2017, Mr. Murphy hired Credit Advantage, "a credit rebuilding/restructuring firm," to help him rebuild his credit rating.

Mr. Murphy traded in the Caravan as part of the purchase of another vehicle from Kahlo Chrysler Jeep Dodge in August 2017. Kahlo Chrysler contacted Indiana Finance to get a payoff figure on the Caravan loan, and created a customer payoff form stating that: the "Payoff Amount" was $10,993.08 as of August 4, 2017, the quote would be good for ten days, and the ten day payoff would be $11,053.01. Mr. Murphy signed a form saying he would be responsible for any deficiency. Kahlo Chrysler didn't send a check until 24 days later. Indiana Finance released the lien on the Caravan upon receiving the check for $11,053.01, but the delay in payment produced an unpaid principal balance of $83.91. That amount continued to accrue interest under the terms of the contract, producing an outstanding balance of $90.86 ($83.91 principal plus $6.95 interest) as of

January 3, 2018. Credit reports issued in January, March, and April 2018 would allow an inference that Indiana Finance reported the balance inconsistently — figures of $83.91, $90, and zero appear on those reports. Indiana Finance explains only the zero balance — at some point in 2018, it stopped reporting anything under $100, so the zero appeared — and doesn't explain the variances in the balance shown. None of the reports showed a past due amount.

Mr. Murphy tried to buy a house in Florida a few months after he traded in the Caravan, but was denied credit. The summary judgement record doesn't include the lenders' stated reasons for denying Mr. Murphy's applications for an extension of credit. Mr. Murphy says he didn't know the Indiana Finance loan hadn't been paid in full until he tried to purchase the home.

On January 4, 2018, Mr. Murphy called Indiana Finance to inquire about the balance on his account and offered to pay it. He doesn't contend that he ever actually paid the balance.

On January 29, 2018, Mr. Murphy sent a letter (drafted by Credit Advantage) to credit reporting agency TransUnion LLC, disputing the accuracy of the information regarding his Indiana Finance account, among others. TransUnion notified Indiana Finance of the dispute in February and asked for confirmation of the disputed amount; Indiana Finance responded that the information was accurate.

3

Mr. Murphy applied to Huntington Bank and Alliant Credit Union for a $66,474.00 loan in March 2018 to purchase an RV. Both applications were denied based in whole or in part on information obtained in a credit report from TransUnion. Alliant's adverse action form said it denied Mr. Murphy's application based on his "past or present credit history." Huntington National Bank said its denial was based on serious delinquency, derogatory public record, or collection filed; insufficient number of satisfactory accounts; insufficient length of relevant credit history; too many recent credit checks.

Mr. Murphy sent a second letter to TransUnion in April 2018 disputing the status of the Indiana Finance account. Trans Union notified Indiana Finance of the dispute and asked for confirmation of the information it provided; Indiana Finance again responded that the information was accurate as of the date reported.

The case is before the court today on Indiana Finance's summary judgment motion. The parties' disagreement over the rules governing the summary judgment process have hobbled the court's ability to identify the facts to which a jury might have to apply the Fair Credit Reporting Act.

A summary judgment ruling resolves whether a jury is needed to sort out a fact issue that affects the case's outcome. If there's no evidence to prove a fact that must be proven under the law, there's no need for a trial. The parties disagree about which party must have evidence. Mr. Murphy speaks of "the high burden

4

necessary to demonstrate the absence of material facts," and posits that "[b]ecause Defendant has not met its burden of demonstrating the absence of material issues of fact as to whether Mr. Murphy's credit denials were caused by its reporting or not, the burden of proof never shifts to the Plaintiff to rebut the Defendant's showing." [Doc. 44-4, at *10-11]. Indiana Finance agrees that would be so if it bore the burden of proof at trial, but since it has no burden of proof in this case, its only burden is to point out where Mr. Murphy's case falls short; at that point, Mr. Murphy must point to enough evidence to let a jury find in his favor.

Indiana Finance is right about the parties' burdens at the summary judgment stage. Summary judgment is appropriate when the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law. Protective Life Ins. Co. v. Hansen, 632 F.3d 388, 391-392 (7th Cir. 2011). The court construes the evidence and all inferences that reasonably can be drawn from the evidence in the light most favorable to the non-moving party — Mr. Murphy in this instance. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Indiana Finance bears the burden of informing the court of the basis for its motion, by pointing out the issue or element of the claim on which its opponent's lack of proof leaves no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If it meets that burden, Mr. Murphy can't rest upon the allegations in

5

the pleadings, but must "point to evidence that can be put in admissible form at trial, and that, if believed by the fact-finder, could support judgment in [its] favor." Marr v. Bank of America, N,A., 662 F.3d 963, 966 (7th Cir. 2011).

Indiana Finance might bear some responsibility for Mr. Murphy misunderstanding of the applicable burdens. Indiana Finance's answer includes a dizzying nineteen affirmative defenses — on which Indiana Finance would bear the burden of proof at trial — and at least a few of those defenses read like simple mirror images of what Mr. Murphy must prove under the the Fair Credit Reporting Act. The parties argue two different summary judgment standards, but it's Mr. Murphy, not Indiana Finance, who must point to evidence sufficient to support a verdict in his favor.

Who must have the evidence takes on an unusual significance under the unique setting of this case. Mr. Murphy didn't produce complete copies of his TransUnion credit report to Indiana Finance until last Friday, fourteen weeks after the summary judgment briefing was complete. The hows and whys and whos of that non-production are the subject of an order to compel, a sanctions order, and a request to reconsider the sanctions order, and aren't important to today's decision. But in their summary judgment briefing, each party relied on the other's inability to tell the court what was in the TransUnion credit report. As the party who would bear the burden of persuasion at trial, Mr. Murphy has the summary

6

judgment burden to show what is in that report if it would control the outcome of the trial.

Indiana Finance received the TransUnion report on May 14. On May 17, Indiana Finance moved for leave to file a supplemental brief and to submit the report as a summary judgment exhibit. The court hasn't read the proposed supplemental brief or the exhibit, and doesn't propose to do so. The court vacated the scheduled May 19 final pretrial conference so that it could focus on the summary judgment motion. The court will need to reset that conference if Indiana Finance's summary judgment motion is unsuccessful, and trial is set for June 1. The court should decide the summary judgment motion on the present record if it can do so.

Indiana Finance and Mr. Murphy also took varying approaches to compliance with this district's Local Rule 56-1(a)(2), which is designed to place factual disputes cleanly before the court. Indiana Finance set forth its statement of what it contends are undisputed material facts, as Rule 56-1(a) requires. Under the rule's terms, Mr. Murphy was to file a statement of genuine disputes, identifying " the material facts that the party contends are genuinely disputed so as to make a trial necessary." N.D. Ind. L. R. 56(b)(2). Instead, Mr. Murphy set forth his own competing list of allegedly undisputed facts. The absence of a statement of disputed fact leaves the court free to assume that Mr. Murphy agrees that the facts in Indiana Finance's statement of undisputed fact are not in

dispute. Crawford v. Countrywide Home Loans, Inc., No. 3:09cv00247PPS-CAN, 2011 WL 3875642, at *2 (N.D. Ind. Aug. 31, 2011).

Two issues about the facts remain, before the court can turn to application of the law. During his deposition, Mr. Murphy testified that various unidentified people told him that he was denied credit to purchase a house and an RV because his credit report showed an outstanding balance on his account with Indiana Finance, and that someone at Indiana Finance (Mr. Murphy couldn't recall who) told him that he or she couldn't take his money when he offered to pay the balance, and that Indiana Finance was going to write off the debt. *See, e.g.,* Exh. C. at page 13, lines 22-23; page 14, lines13-15; page 15, lines 1-25; page32, lines 4-12; page 37, lines 16-20; page 38, lines 16-20; page 45, lines11-12; page 48 lines 17-22. In support of his opposition to the summary judgment motion, Mr. Murphy submitted those deposition exhibits and a printout of account notes Indiana Finance provided in discovery (Plaintiff's Exh. N) indicating that Mr. Murphy contacted Amanda Kyle, an Indiana Finance employee, on January 4, 2018 to "ver[ify] info" and summarizing the conversation as follows:

> CUST SAYS WE ARE CHEATING HIS CREDIT REPORT SAYING HE OWES $87 AND ANOTHER MONTH $88
> CUST SAID THE DEALERSHIP PAID HIS CAR OFF SO HE WANTS TO KNOW WHY WE ARE ON THIS CREDIT REPORT
> ADV CUST THAT HE CAN EMAIL US HIS CREDIT REPORT AND WE WILL SEE WHAT WE CAN DO TO GET IT FIXED FOR HIM
> CUSTOMER SAID HE WILL EMAIL IT TO INDIANA FINANCE BC THIS IS HITTING HIS CREDT HARD 10 TO 12 POINTS AND HE HAS WORKED TO HARD ON HIS CREDIT....

8

[Doc. No. 44-4 at p. 327]. Indiana Finance moved to strike the statements in both documents as inadmissible hearsay under Fed. R. Evid. 801(c) and 802.

Mr. Murphy didn't respond to the motion to strike the third-party statements contained in Mr. Murphy's deposition testimony (Plaintiff's Exhibit C) or contend that they would fall within any of the recognized exceptions to the rule against hearsay. The statements in question are hearsay, Fed. R. Evid. 801(c), would be inadmissible at trial under Fed. R. Evid. 802, and so are stricken.

Indiana Finance also contends that its account notes (Plaintiff's Exhibit N) and the statements Mr. Murphy reportedly made to Ms. Kyle are hearsay and should be stricken because a party isn't entitled to offer its own out-of-court statements into evidence. *See* United States v. Lewis, 641 F.3d 773, 784 (7th Cir. 2011). Mr. Murphy responds that: (1) the notes fit within the business records exception, Fed. R. Evid. 803(6); (2) the statement attributable to Ms. Kyle is an admission by a party opponent that the information in Mr. Murphy's credit report was inaccurate and that Indiana Finance intended "to get the inaccurate credit reporting 'fixed for him," and is admissible under Fed. R. Evid. 801(d)(2); and (3) Mr. Murphy's statements regarding inaccurate credit reporting and the effect it had on his credit score are admissible because they "provide context" to Indiana Finance's admission, citing United States v. Tolliver, 454 F.3d 660, 666 (7th Cir. 2006) ("statements providing context for other admissible statements are not hearsay because they are not offered for their truth.").

9

Mr. Murphy has the better of this legal argument. It's a reasonable inference that Ms. Kyle was acting within the scope of her agency with Indiana Finance when she made the entry at issue. *See* Fed. R. Evid. 804(b)(2)(C, D). Her entry doesn't vouch for the truth of anything that Mr. Murphy said, and so isn't proof of the truth of Mr. Murphy's statement, but it's perfectly competent evidence that Mr. Murphy said what the entry reflects, and that Indiana Finance (through Ms. Kyle) made statements reflected in the entry that can be considered to be true.

So the court grants Indiana Finance's motion to strike the third-party statements in Plaintiff's Exhibit C, but overrules its motion to strike the statements contained in Plaintiff's Exhibit N [Doc. No. 45].

Having addressed who must do what on a summary judgment motion and what facts are in the summary judgment record (which must be viewed as favorably to Mr. Murphy as is reasonably possible), the opinion can turn to the application of the law to those facts. Mr. Murphy's claim is based on Indiana Finance's alleged failure to investigate alleged inaccuracies in the credit information it provided to TransUnion, in violation of 15 U.S.C. § 1681s-2(b).[1] He

---

[1] Section 1681s-2(b) provides as follows:
**(b) Duties of furnishers of information upon notice of dispute**
   **(1) In general**
After receiving notice...of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall–
   **(A)** conduct an investigation with respect to the disputed information;
   **(B)** review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2)

10

brings both a claim for willful noncompliance under 15 U.S.C. § 1681n (for which he needn't prove damages) and a claim for negligent noncompliance under 15 U.S.C. § 1681o (which requires proof of damages. *See* Hariton v. Chase Auto Fin. Corp., 2010 WL 3075609, at *5 (C.D. Cal. Aug. 4, 2011). Under either theory, "[f]urnishers of information…are accountable under § 1681s-2(b) only if they continue to supply inaccurate data to credit reporting agencies after proper notification by the [credit reporting agency]." Rollins v. Peoples Gas Light and Coke Co., 379 F.Supp.2d 964 (N.D. Ill. 2005).

No reasonable trier of fact could decide for Mr. Murphy on this summary judgment record. Mr. Murphy hasn't pointed to any evidence that the information Indiana Finance provided to TransUnion was inaccurate, that Indiana Finance failed to review all relevant information provided by the consumer reporting

---

of this title;
    **(C)** report the results of the investigation to the consumer reporting agency;
    **(D)** if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
    **(E)** if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly–
        (i) modify that item of information;
        (ii) delete that item of information; or
        (iii) permanently block the reporting of that item of information.

11

agency, or that it failed to report the results of its investigation to Transunion, or that he was denied credit in 2017 and 2018 because of information that Indiana Finance provided to the credit reporting agencies regarding the status of his account.

The undisputed evidence shows that Mr. Murphy had an outstanding balance of $90.86 ($83.91 principal balance plus $6.95 accrued interest) on his account with Indiana Finance as of January 2018 due to the delay in paying off the installment contract. Mr. Murphy never disagreed that he was responsible for any deficiency from the payoff and offered to pay the balance when he called Indiana Finance to ask if there was one, he didn't pay the deficiency.

Excerpts from Mr. Murphy's 2018 credit reports that are in the summary judgment record show that the Indiana Finance account was in good standing with a balance of $90.00. When Mr. Murphy disputed the status of his account with TransUnion, Indiana Finance confirmed that he still owed the balance on the account.

The court GRANTS Indiana Finance's motion for summary judgment on Mr. Murphy's Fair Credit Reporting Act claim [Doc. No. 44-1] and related motion to strike the third-party statements in Plaintiff's Exhibit C [Doc. No. 45] [Doc. No. 45], OVERRULES it's objection to Plaintiff's Exhibit N, and VACATES the June 1, 2021 trial date. Indiana Finance shall notify the court by **May 27** whether it intends to proceed on its counterclaims.

12

SO ORDERED.

ENTERED:  May 20, 2021

                                             /s/ Robert L. Miller, Jr.
Judge
United States District Court